## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| JAMES E. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:05-CV-0081-PRC |
| | ) | |
| ATTORNEY GENERAL OF THE UNITED | ) | |
| STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a "Motion to Dismiss or, in the Alternative, for Summary Judgment" [DE 36], filed by Defendant Attorney General of the United States of America ("Attorney General"). Plaintiff James E. Turner, a *pro se* prisoner, filed a "Plaintiff's Motion Response in Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, and Plaintiff[sic] Request in the Alternative, The Court Should Grant Summary Judgment for Plaintiff" [DE 44]. The Attorney General then filed a "Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment." For the following reasons, the Court grants the Attorney General's Motion for Summary Judgment and denies Turner's Motion for Summary Judgment.

## PROCEDURAL HISTORY

On November 15, 2005, Turner commenced this case by filing a *pro se* Complaint entitled "Motion for Return of Seized Funds in the Amount of $12,000 in United States Currency Pursuant to 28 U.S.C. §§ 2461, 2462 and 18 U.S.C. §§ 981, 982, 984." In his Affidavit attached to the Complaint, Turner claims sole ownership of the $12,000 (hereinafter also "property" or "money"), asserting that no other person has any interest in the seized money. Turner also alleges that the

property was not used for any illegal act and was not the proceeds of any illegal act. In the Complaint, Turner alleges that no formal notice of forfeiture was filed or presented to him and that no formal forfeiture proceedings were initiated. However, Turner acknowledges that possession of the property was transferred from the State of Indiana to the United States. He alleges that the property should have been returned to him after the dismissal of the state criminal charge and that the Federal Bureau of Investigations ("FBI") did not have jurisdiction over the property while the state action was pending.

On October 20, 2006, the District Court screened Turner's Complaint pursuant to 28 U.S.C. § 1915A, determined that Turner was requesting a return of property under Federal Rule of Criminal Procedure 41(g), and dismissed the case, holding that Turner was estopped from asserting the claim because the statute of limitations had expired.

On November 13, 2006, Turner filed a Notice of Appeal. On appeal, the Attorney General conceded that Plaintiff's 41(g) claim was not time barred. However, the Attorney General maintained that the property had been administratively forfeited and, therefore, Rule 41(g) was not the proper vehicle for seeking return of the property. On May 3, 2007, the Seventh Circuit vacated the District Court's dismissal and remanded for further proceedings, advising that, "[o]nly with additional information about how the United States came to possess the money–and what it did with it–could the district court decide how to construe Turner's filing." *Turner v. Gonzales*, No. 06-4020, 2007 WL 1302126, at *2 (7th Cir. May 3, 2007). Nevertheless, the Court of Appeals held that, "[i]f it turns out that the government is correct about the administrative forfeiture, Turner's only remedy is a motion to set aside the forfeiture." *Id*. (citing 18 U.S.C. § 983(e)(1), (e)(5)).

On July 13, 2007, Turner filed a Motion to Amend Complaint, and the Attorney General filed a response on July 24, 2007. On July 27, 2007, the Court granted the motion, and the Clerk of Court docketed Turner's Amended Complaint. To the Amended Complaint, Turner attached his original Complaint and Affidavit, the Chronological Case Summary related to the Newton County, Indiana charges, the Seventh Circuit remand order, and a document entitled "Sentence Monitoring Computation Data as of 07-03-2007" related to the federal sentence Turner is currently serving. Seeking return of the seized $12,000 and fees and costs, Turner's pro se Amended Complaint invokes 42 U.S.C. § 1983 or, alternatively, 18 U.S.C. § 983(e)(1).[1] Turner alleges that the FBI took possession of the property without providing him notice in violation of his due process rights. He further alleges that the FBI should have known that he was in federal custody as of February 12, 2003, and, thus, should have known that its attempts to serve him by certified mail at his last known addresses were insufficient to apprise him of the forfeiture proceedings.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case, and the case was reassigned to the undersigned Magistrate Judge on August 30, 2007. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On October 11, 2007, the Attorney General filed the instant Motion for Summary Judgment, a Memorandum in Support, evidence in support–including the sworn Declarations of Kathi Brewster and Wanda P. Mackall, and a Notice to *pro se* litigant. On December 7, 2007, Turner filed his

---

[1] Allegations of a *pro se* complaint are held to a less stringent standard than legal pleadings drafted by lawyers. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). It is well settled in the Seventh Circuit that "substance controls over caption." *United States v. Lloyd*, 398 F.3d 978, 979 (7th Cir. 2005). Turner captions this filing as an "Amended Complaint," asserting multiple legal theories in support of his action. However, because the property was administratively forfeited, his sole remedy is to move to set aside the forfeiture under 18 U.S.C. § 983(e), and, thus, the document serves as a motion to set aside forfeiture of property.

combined Response in Opposition of Defendant's Motion for Summary Judgment and Motion for Summary Judgment. The Attorney General filed a Reply Brief in Support of its Motion for Summary Judgment on December 17, 2007.

On September 9, 2008, the Court ordered the Attorney General to submit two additional affidavits of an FBI employee setting forth: (1) whether a person executing an NCIC search would reasonably expect search results to produce federal charges pending against an individual; and (2) whether any other steps were reasonably available to locate Turner based on the information gathered from the June 9, 2003 NCIC search. In response, the Attorney General submitted the Second Declaration of Kathi A. Brewster on September 15, 2008.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

4

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on his or its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material

facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## FACTUAL BACKGROUND

### A.  The Arrest and Seizure

On February 1, 2003, Officer Jamie Garcia, of the Newton County Sheriff's Office, conducted a traffic stop for speeding. James Turner was a passenger in the vehicle. While speaking to the driver, Mark Ayer, Garcia smelled marijuana; he directed Ayer to step to the back of the car. Ayer consented to a search of his vehicle. Before conducting the search, Garcia instructed Turner to also exit the car. During the search, Garcia found one and a half cigars he suspected were "blunts," cigars from which the tobacco had been removed and replaced with marijuana. Ayer admitted to Garcia that the marijuana belonged to him. A second officer who had been searching the vehicle appeared with a sack containing a "large amount of money," which was later determined to total $12,000. Def. Br., Exh. A4. The bag of money was found in Ayer's jacket. Although the money was in Ayer's jacket, Ayer said it belonged to Turner. Ayer and Turner were arrested and taken to the Newton County jail.

When asked by Garcia how much money was in the sack, Turner "advised [Garcia] that he was no[t] going to say anything because he did not want to incriminate himself." *Id.*

The Newton County Prosecutor charged Turner with visiting a common nuisance, a misdemeanor under Indiana state law. The Information alleged that Turner "knowingly or intentionally visited a vehicle used by another person to unlawfully use a controlled substance." Def. Br., Exh. A1. The Fowler Police Department held the $12,000 as evidence. The Chronological Case Summary[2] indicates that Turner posted bond on February 4, 2003, with an order to appear on February 19, 2003. Turner did not appear as ordered, and on February 19, 2003, the state court issued a warrant for failure to appear.

## B. The Forfeiture

Two days later, on February 21, 2003, after Turner did not appear in court as ordered, the Newton County Prosecutor filed a motion to transfer the seized property to the FBI for forfeiture proceedings under 21 U.S.C. § 881. The record does not show that a copy of the motion was sent to any of the parties to whom notice was later sent by the FBI during the federal administrative forfeiture proceedings. The same day, pursuant to Indiana Code § 35-33-5-5(j), the Newton County Superior Court granted the motion and ordered the Fowler Police Department to transfer possession of the $12,000 to the FBI. The FBI took possession of the property on March 4, 2003.[3]

Kathi Brewster, a Forfeiture Paralegal Specialist with the FBI's Chief Division Counsel's Office in Indianapolis, Indiana, stated in her sworn Declaration that she was involved in processing

---

[2] Turner filed only the first and last pages of what appears to be a three-page document.

[3] The Chronological Case Summary submitted by Turner shows that, a little over a year later, the Newton County Prosecutor filed a Motion to Dismiss Without Prejudice on May 17, 2004, that the court granted the motion that day, and that on May 18, 2004, the court dismissed the case against Turner without prejudice.

the administrative forfeiture of the property.[4]  Her responsibilities included identifying and locating parties with a possible interest in the seized property.  Accordingly, she obtained two addresses for Turner–a Chicago, Illinois address he provided at the time of the traffic stop and an Evansville, Indiana address on his Indiana driver's license.  Additionally, Brewster located the address of the attorney who represented Turner in the Newton County misdemeanor case, Harry Joe Falk.  She provided all three addresses to FBI Headquarters.  Brewster stated in her Supplemental Declaration that a criminal history inquiry made in March 2003 using Turner's FBI number did not reveal that Turner was in custody.

Wanda Mackall, a Paralegal Specialist with the FBI's Washington, D.C. Forfeiture and Seized Property Unit of the Finance Division, stated in her sworn Declaration that her review of the FBI's records pertaining to the forfeiture proceedings revealed that notices of the seizure and intent to forfeit postmarked March 11, 2003, were sent by certified mail, return receipt requested, to three individuals: James Edward Turner, Mark Frederick Ayer, and Tommy L. Davis.  The notices mailed to Turner were sent to both the Chicago, Illinois and Evansville, Indiana addresses.  The Chicago letter was returned "Unclaimed," while the Evansville letter was returned as "Not deliverable as addressed."  The record does not reveal the date the returned certified mail notices were received by the FBI.  On March 11, 2003, a notice was also sent by certified mail, return receipt requested, to James Edward Turner c/o Harry Joe Falk.  On March 24, 2003, attorney Falk sent a letter to the FBI stating that he did not represent Turner.

For three consecutive weeks, on March 30, 2003, April 6, 2003, and April 13, 2003, the FBI published notices of the seizure and intended forfeiture of the property in the *New York Times*

---

[4] Kathi Brewster has been employed with the FBI since 1991.

newspaper. All of the notices stated that any claim for the seized property must be received by April 15, 2003. The FBI records reflect that no claims were received for the property prior to the April 15, 2003 deadline and that no petition for remission or mitigation of forfeiture was received in relation to the property.

On June 9, 2003, the FBI ran a National Crime Information Center ("NCIC") search for Turner. The NCIC search revealed that Turner was "wanted" by the Newton County Sheriff's Office for failure to appear at the February 19, 2003 hearing in the state case in which the property subject to forfeiture was seized. According to Brewster, NCIC searches provide information on active warrants, criminal history, and each state's Bureau of Motor Vehicles database. She stated that an individual making an inquiry on the system would reasonably expect to find pending federal charges against the person being researched. She further explained, however, that "if an arresting agency failed to report to NCIC or delayed in reporting to NCIC, a query would not reveal that a warrant had been issued for an individual's arrest or the individual had actually been arrested." Def. Br., Brewster Supp. Decl., p. 1. Brewster averred that, even in light of such a possibility, based on her training and experience, the NCIC is the most reliable and comprehensive database for such inquiries and that, based on the information gathered from the 2003 NCIC search, she knows of no other reasonably available steps to locate Turner at that time.

Before the property was declared administratively forfeited, an attorney assigned to the FBI's Legal Forfeiture Unit reviewed a "Forfeiture Review Form" and forfeiture file and determined that adequate information supported the action and that no legal impediments existed. Therefore, on August 6, 2003, the $12,000 was declared administratively forfeited to the United States, pursuant to 19 U.S.C. § 1609.

## C.  Turner's Incarceration

On February 27, 2003, the United States Attorney for the Southern District of Indiana charged Turner with several drug trafficking offenses that were *unrelated* to the traffic stop in Newton County.[5]  In his brief in response to summary judgment, Turner claims that the government took him into custody on these charges on February 12, 2003.[6]  On March 5, 2003, the United States District Court for the Southern District of Indiana ordered Turner detained pending trial.  The Attorney General acknowledges that it is undisputed that, at the time the FBI issued the mailed notices on March 11, 2003, related to the forfeiture of the $12,000 seized during the traffic stop in Newton County that led to the state misdemeanor charge, Turner was in federal custody in the unrelated federal case pending in the Southern District of Indiana.  On April 6, 2004, Turner filed a plea agreement in his federal case, and on April 9, 2004, the district court accepted the plea agreement and found him guilty.  Turner remains incarcerated under a 170-month sentence imposed October 18, 2004.

## D.  Turner's Efforts to Recover the Property

In his Amended Complaint, Turner alleges that he did not learn that the federal government had taken possession of the $12,000 until he received a copy of the Newton County Superior Court docket sheet after December 17, 2004.  Subsequently, Turner made an inquiry pursuant to the Freedom of Information Act regarding the $12,000.  On June 9, 2005, the Office of Information and

---

[5] Although the Attorney General states in his brief that an "Exhibit F" containing a copy of the complaint, affidavit, and returned arrest warrant from the federal criminal case is attached to the Motion for Summary Judgment, *see* Def. Br., p. 6, no such exhibit was filed of record with the Court.  However, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the docket sheet from the United States District Court for the Southern District of Indiana in the matter of *United States v. Turner*, EV03-CR-0010-01-Y/H.

[6] The Sentence Monitoring Computation Data as of 07-03-2007 submitted by Turner in support of his response brief shows that the "earliest date of offense" is February 12, 2003, and that he has "jail credit" from February 12, 2003, through February 13, 2003, and February 27, 2003, through September 30, 2004.

Privacy sent Turner a letter advising that no responsive records were found in the United States Attorney's Office for the Northern District of Indiana.

**ANALYSIS**

Although the instant motion is entitled "Motion to Dismiss or, in the Alternative, for Summary Judgment," the Attorney General cites only the rule governing summary judgment and attached two affidavits in support of the motion. If a motion to dismiss presents matters outside the pleadings, the "motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Therefore, the Court construes the motion as one for summary judgment only and proceeds accordingly.

In reversing and remanding this case, the Court of Appeals held that, on remand, Turner could proceed under "several possible theories" to secure the property's return but that, if the Attorney General could prove that the property had in fact been administratively forfeited, Turner's exclusive remedy would be a motion to set aside the forfeiture under 18 U.S.C. § 983(e)(1). *See Turner v. Gonzales*, 2007 WL 1302126, * 3 (7th Cir. May 3, 2007).[7] In support of the Motion for Summary Judgment, the Attorney General has submitted affidavits from two FBI Paralegal Specialists establishing that the $12,000 seized in Newton County on February 1, 2003, was administratively forfeited to the United States on August 6, 2003. Accordingly, Turner's exclusive remedy is to seek to have the administrative forfeiture set aside under § 983(e). *See* 18 U.S.C. § 983(e)(5). Any

---

[7] Because this case was screened pursuant to 28 U.S.C. § 1915A and dismissed at the district court level prior to the filing of any responsive pleading by the Attorney General, the first time the Attorney General had an opportunity to present argument or evidence relating to the administrative forfeiture was on appeal.

challenges made by Turner to the merits of the administrative forfeiture proceeding are dismissed for lack of subject matter jurisdiction.[8]

The narrow issue now before the Court on Turner's request to set aside the administrative forfeiture is whether the government's actions to provide Turner with notice of the administrative forfeiture complied with the statute and with the constitutional requirements of due process. In the Motion for Summary Judgment, the Attorney General argues that, although Turner did not receive actual notice of the administrative forfeiture proceedings, the FBI's efforts to notify Turner satisfied due process because the FBI complied with the applicable statutory requirements and then exceeded the statute's requirements by trying to locate Turner with the NCIC search after the mailed notice came back undelivered. In response, Turner contends that, even if the Attorney General complied with the statutory notice procedure, the FBI's actions did not satisfy due process because he was in federal custody throughout the period the FBI attempted to provide notice, and, since the government knew or should have known his whereabouts, compliance with the statute was unlikely to provide him with actual notice.

### A. Standard for Set Aside of Administrative Forfeiture

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") establishes the rules governing civil forfeiture actions, both judicial and nonjudicial, and applies to all civil forfeiture actions initiated after August 23, 2000. *See* 18 U.S.C. § 983 (rules governing forfeiture proceedings); Pub. L. No. 106-185, 114 Stat 202, § 21, 8 U.S.C. § 1324 (note) (effective date). When seized property

---

[8] Although his Amended Complaint alleges that his due process rights were violated because he did not get notice of the administrative forfeiture proceedings, Turner raises arguments going to the merits of the administrative forfeiture in his response to the Attorney General's Motion for Summary Judgment, which constitutes his own Motion for Summary Judgment as well. For example, Turner argues that there is a genuine issue of material fact as to whether the FBI had reasonable probable cause under 21 U.S.C. § 881 to move for seizure of the $12,000. Again, pursuant to 18 U.S.C. § 983(e)(5), a motion to set aside the forfeiture is Turner's sole remedy related to the property.

is U.S. currency, the government may pursue administrative forfeiture in accordance with the procedures set forth in the Act. *See* 18 U.S.C. § 981(d); 19 U.S.C. § 1607(a).

To properly bring an administrative forfeiture action, the government must comply with the statutory notice requirements of 18 U.S.C. § 983 and 19 U.S.C. §§ 1607-1609. The former provides in pertinent part:

> In a case in which property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency.

18 U.S.C. § 983 (a)(1)(A)(iv). More specifically, the notice must be sent to interested parties "in a manner to achieve proper notice as soon as practicable." *Id.* § 983(a)(1)(A)(i). Section 1607 provides that notice of the seizure of the currency and the intention to forfeit the currency must be "published for at least three successive weeks" and that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized [currency]." 19 U.S.C. § 1607(a); *see also* 21 C.F.R. § 1316.75(a) (setting forth the requirements of published notice). If no claim is filed within the applicable limitations period, the property is declared administratively forfeited and title transfers to the United States. *See* 19 U.S.C. § 1609; *see also Lobzun v. United States*, 422 F.3d 503, 506-07 (7th Cir. 2005).

Once the property is administratively forfeited, the district court is divested of jurisdiction to review the merits of the forfeiture. *Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000). The exclusive remedy for a claimant challenging the administrative forfeiture is to file a motion to set aside the declaration of forfeiture under 18 U.S.C. § 983(e)(1). *See* 18 U.S.C. § 983(e)(5) ("A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."); *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004), *cert.*

*denied*, 543 U.S. 1094 (2005); *see also Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000) (recognizing, prior to the enactment of 18 U.S.C. § 983, that federal courts possess jurisdiction to review collateral due process attacks on the constitutional sufficiency of notice). Section 983(e)(1) provides:

> Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if–
>
>> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>>
>> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1). If the motion is granted, the declaration will be set aside "as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent proceeding." *Id*. § 983(e)(2)(A).

### B. The Constitutional Sufficiency of the Government's Efforts to Provide Turner with Notice

Under § 983(e)(1)(A), the FBI knew of Turner's interest in the property. The question before the Court then is whether the FBI took "reasonable steps" to provide him with notice. *Id*. The constitutional standard of due process, announced in *Mullane v. Central Hanover Bank & Trust, Co.*, requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). Whether statutory notice satisfies constitutional due process is determined with "due regard for the particularities and peculiarities of the case." *Id.* at 314-15. Factors relevant to that determination include the nature of the interest at stake and whether the party

entitled to notice is "known" or "unknown." *Mullane*, 339 U.S. at 318. Due process is not satisfied if the government "knew or had reason to know that the notice would be ineffective." *Lobzun*, 422 F.3d at 507 (citing *Krecioch*, 221 F.3d at 980). However, when the government does not know or reasonably cannot discover the claimant's whereabouts, the government may satisfy due process with mere publication of a forfeiture notice. *Mullane*, 339 U.S. at 315-20.

In *Dusenbery v. United States*, the Supreme Court held that due process requires only that the government attempt to provide actual notice but that actual notice is not required. 534 U.S. 161, 170-71 (2002) (rejecting as dicta the actual notice requirement articulated in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)). Nevertheless, *Dusenbery* did not repudiate the fundamental tenet that notice must be "reasonably calculated, under all circumstances, to apprise [petitioner] of the pendency of the action." *Id.* at 173 (quoting *Mullane*, 339 U.S. at 314).

More recently, the Supreme Court held in *Jones v. Flowers* that, when notice sent by certified mail is returned undelivered, the government must take "additional reasonable steps . . . if practicable," to provide a property owner with notice. 547 U.S. 220, 234 (2006) (addressing due process requirements of notice to the owner of real property in the context of a tax sale). Such additional steps are required even if, at the time, those prior efforts were reasonably calculated to provide notice. *Id.* at 238 (reaffirming the notice standard articulated in *Mullane*). If no reasonable additional steps could have been taken once notice sent by certified mail is returned unclaimed, the government "cannot be faulted for doing nothing." *Id.* at 234. However, the Supreme Court reiterated that "[i]t is not our responsibility to prescribe the form of service that the [government] should adopt." *Id.* at 234 (citing *Greene v. Lindsay*, 456 U.S. 444, 455 n. 9 (1982)).

The Attorney General argues that the supplemental actions required by *Flowers* need not be onerous. In fact, in *Dusenbery*, the Supreme Court held that *Mullane* stood for the proposition that the government is not required to resort to heroic efforts to locate a party, but that their efforts be "reasonably calculated" to apprise the party of pendency of the action. *Dusenbery*, 534 U.S. at 170. Furthermore, the Supreme Court in *Flowers* declined to rule that, once the notices sent by certified mail were returned undelivered, the government needed to search phonebooks or other government records for the claimant's address. Doing so, the Supreme Court implied, would place a significantly greater burden on the government than other follow-up actions because such a search was "open-ended." *Flowers*, 547 U.S. at 237. Rather, the Supreme Court found that the county government could have resent the notice by regular mail or posted the notice on the real property as additional reasonable steps to apprise the property owner of the tax sale. *Id.* at 234-35.

In the forfeiture proceedings underlying the instant case, the FBI sent Turner written notice by certified mail to two residential addresses on March 11, 2003; both notices were returned to the FBI, one as "Unclaimed" and one as "Not deliverable as addressed." Also on March 11, 2003, the FBI sent a copy of the notice to Harry Joe Falk, the attorney who represented Turner in the Newton County misdemeanor case, but he responded, indicating that he did not represent Turner. In addition, pursuant to the statute, the FBI published a notice of its intention to forfeit the property in the New York Times for three consecutive weeks in March and April 2003.

As required by *Flowers*, after the written notices sent by certified mail had been returned and, thus, were insufficient to notify Turner of the FBI's intention to forfeit the property, the FBI took an

additional step to ascertain Turner's whereabouts.[9]  On June 9, 2003, the FBI searched for Turner

through the NCIC database.  The NCIC search results revealed only an arrest warrant outstanding

for Turner in Newton County for failing to appear at his February 19, 2003 court hearing.  The

property was not administratively forfeited until August 6, 2003.

Turner contends, without supporting evidence, that, because he was in federal custody at the

time the FBI issued both the mailed and published notices, the FBI knew or should have known his

location, and, thus, the notice sent to his personal addresses was not reasonably calculated to apprise

him of the forfeiture proceedings.  Turner makes the argument that the government's right hand

should have known what the left hand was doing.  However, the legitimate inference drawn from the

evidence is that the FBI did not have actual knowledge of Turner's incarceration prior to the

forfeiture based on the March 2003 criminal history search and the June 2003 NCIC search, neither

of which revealed that he was being held on federal charges.  Although Turner argues that the FBI

should have known his whereabouts, the statutory and constitutional standards require the Court to

ask whether the FBI, having identified Turner as an interested party, took steps reasonably calculated

to locate him and provide him notice.

When the FBI executed the NCIC search in June 2003, the results revealed the Newton

County arrest warrant but did not reveal that Turner was in federal custody or that federal charges

were pending against him in the Southern District of Indiana.  In her Supplemental Declaration,

Brewster explains that an individual conducting an NCIC query would reasonably expect any pending

federal charges to appear in the search results.  However, she also explained that if the arresting

---

[9] It is not clear from the record the exact date the certified mail was returned to the FBI; however, given that the notices were sent on March 11, 2003, and the NCIC search was not conducted until early June 2003, it is reasonable to infer that the notices were returned prior to the search.

agency had failed to report or delayed in reporting to the NCIC, the query would not reveal the charges. Although Turner had been arrested on the federal charges and was in federal custody by early March 2003, the June 2003 NCIC search did not produce that information; it appears that the information regarding Turner's arrest and the federal charges either did not get reported or was delayed in being reported. Based on the information she gathered from that June 2003 NCIC search, Brewster did not know of any other reasonably available steps to locate Turner at that time, and she believes that the NCIC search is the most reliable and comprehensive database for such inquiries.

Having considered the "particularities and peculiarities" of this case, the Court finds that the FBI's efforts to provide Turner with notice were reasonably calculated to advise him of the forfeiture proceedings and that the FBI's June 2003 NCIC search constituted a reasonable additional effort to locate Turner in order to provide him notice once the certified mail was returned undelivered, as required by *Flowers*. Like the additional steps suggested by the Supreme Court for notice of the tax sale in *Flowers*—notices sent by regular mail and notice posted on the real property, the FBI's additional step of the NCIC search was reasonably calculated to notify Turner in that any information on his whereabouts gathered from the search would have allowed the FBI to reissue the personal notice.

Given the information the FBI reasonably expected an NCIC search to produce, notably pending federal charges, requiring the FBI to take any other additional steps would have been akin to the open-ended phonebook search in *Jones* that the Supreme Court held unwarranted. First, it would have been nothing more than speculation to conclude that Turner did not appear for his hearing in Newton County or that the mailed notices were not deliverable because Turner was in federal custody in an unrelated case (and anomalously unreported to NCIC), as opposed to any number of

other reasons such as being admitted to a hospital, moving, dealing with family issues, suffering from mental disease, or purposefully evading the government. Then, if the FBI had accurately guessed that the reporting of Turner's federal charges had been overlooked or delayed and that he had not only been charged but was also being detained in another case, without knowledge that he had been charged in the Southern District of Indiana, any search for Turner would again resemble sorting through phonebooks. Turner does not suggest what kind of additional search the FBI could have done to locate him at that time, even if speculation had led it in the right direction.

When compared to similar cases involving the administrative forfeiture of U.S. currency related to criminal charges, this case is notable in that the FBI was unaware that Turner was in federal custody on an unrelated criminal charge and yet still made an additional effort to locate him in order to provide him with notice when it learned that its first efforts to notify him had failed.

For example, in *Montgomery v. Scott*, although the DEA knew that attempts to send notice of forfeiture proceedings by certified mail had failed, it made no further effort to locate the plaintiff and proceeded to forfeit the property administratively. 802 F. Supp. 930, 932 (W.D.N.Y. 1992). The court set aside the forfeiture, holding that the DEA did not act reasonably and deprived the plaintiff of due process because the DEA possessed additional information it could have used to locate the plaintiff but failed to do so. *Id.* at 935-36. Specifically, the court found that it was evident from local police department reports in the possession of the DEA that "state criminal charges were pending and that a simple telephone call could have shed light on those proceedings and plaintiff's status." *Id.* at 936-37. In this case, as in *Montgomery*, the FBI, like the DEA, complied with the requisite statutory notice provisions but the mailed notices were returned. In contrast, the FBI did not have additional information regarding Turner in its possession; however, it made an additional effort to

obtain such information through the NCIC search. If the search had revealed information related to the pending federal charges, the FBI could have, as suggested by the court in *Montgomery*, used that information to locate Turner and provide him notice.

In *Williams v. United States Drug Enforcement Administration*, the plaintiff, like Turner, was incarcerated on unrelated criminal charges when the DEA attempted to send him notice of the forfeiture proceedings by certified mail to his residence and the notices were returned. 51 F.3d 732, 734 (7th Cir. 1995). However, in *Williams*, the DEA was in weekly contact with the incarcerated plaintiff and one DEA agent even visited him at the jail. *Id*. None of the agents ever mentioned the pending forfeiture to the plaintiff despite the fact that one of the agents who regularly spoke with him had filled out the form used to initiate the forfeiture proceedings. *Id*. The Seventh Circuit found the government's conduct egregious and frowned on the DEA's justification that it had relied on the notice procedures employed at its Washington office. *Id*. at 735. In contrast, the FBI did not know Turner was in federal custody in an unrelated criminal proceeding, and neither the criminal history check in March 2003 nor the NCIC search in June 2003 revealed the pending federal charges. The Declarations of Brewster and Mackall demonstrate communication between the local and Washington D.C. offices. Furthermore, Turner does not allege to have been in contact with the FBI prior to or during the forfeiture proceedings.

Here, unlike in *Montgomery* or *Williams*, after the March 2003 notices sent by certified mail to Turner's Illinois and Indiana addresses were returned, the FBI took an additional step to identify Turner's location by searching the NCIC database in June 2003, which did not reveal that Turner was in federal custody or that he had federal charges pending against him. The FBI's efforts–initially sending Turner notice by certified mail to two addresses, sending notice to Turner's former attorney,

conducting a criminal history check based on Turner's FBI number, publishing notice, and conducting the June 2003 NCIC search once the certified mail was returned–were reasonably calculated, under all the circumstances, to apprise Turner of his opportunity to raise an objection to the administrative forfeiture proceedings. Therefore, the Court denies Turner's request to set aside the administrative forfeiture and grants summary judgment in favor of the Attorney General and against Turner.[10]

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [DE 36] and **DENIES** Plaintiff's Motion for Summary Judgment [DE 44]. All pretrial and trial settings are vacated.

So ORDERED this 29th day of September, 2008.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record

---

[10] To successfully set aside an administrative forfeiture, a plaintiff must not only demonstrate that the government failed to take reasonable steps to provide notice but also that the plaintiff "did not know or have reason to know of the seizure within sufficient time to file a timely claim." 8 U.S.C. § 983(e)(1)(B). Because Turner has failed to establish that the government did not take reasonable steps to give him notice, the Court need not address the second prong of the statute.